# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ABLE HOME HEALTH, LLC, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>ONSITE HEALTHCARE, INC., S.C., *et al.*, )<br>)<br>Defendants. )<br>)<br>) | Case No. 16-cv-8219<br><br>Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Onsite Healthcare, Inc., S.C.'s motion to dismiss [29]. For the reasons set forth below, Defendant's motion [29] is granted with respect to Counts II through Count V, but denied with respect to Count I. This case is set for further status on June 15, 2017, at 9:00 a.m. to discuss pre-trial scheduling and the possibility of settlement.

**I.     Background**

Defendant Onsite Healthcare, Inc., S.C. "provides professional medical services to home bound patients in the State of Illinois through its staff of licensed physicians." [29-1, at 2.] Plaintiff Able Home Health, LLC is a "home healthcare agency" that provides "nursing and therapy services to home bound patients" in Illinois. *Id.* In July 2016, Plaintiff received a two-page fax on its fax machine from Defendant. [1, ¶ 9.] That fax is on Defendant's letterhead, addressed to "Home Health Partners," and has the subject line, "New Physician to serve the Rockford Area." [1, at 21.] The text of the fax's first page states:

> Dear Partners in Healthcare,
>
> We are happy to announce the addition of Louis R. Warren, MD to Onsite Healthcare's team of Providers. Dr. Warren will be able to support the internal

> medicine needs of patients in the areas of Rockford and Belvedere effective July 11, 2016.
>
> Please feel review our update[d] list of Providers below:

*Id.* The fax then includes a chart of Defendant's providers—identifying their names and specialty area—and lists a phone and fax number for a "New Referral Hotline." *Id.* The fax further states, "Please feel free to call or contact me for more information," and is signed by Defendant's Vice President of Operations. *Id.* The second page of the fax is essentially a patient form. *Id.* at 22. The top box is titled, "Requested Services (please check all that apply)" and lists four specialties (internal medicine, preventative medicine, echocardiograms, and ultrasounds and Doppler studies). *Id.* The form then provides blank sections to be filled out with information about the "referring company" and "patient" (including the patient's phone number, date of birth, insurance information, and medical information, such as main diagnoses). *Id.*

Plaintiff contends that this fax was "unsolicited," and "deprived [Plaintiff] of its paper and ink or toner and use of its fax machine." [1, ¶ 2.] Based on these allegations, Plaintiff filed the instant complaint against Defendant, asserting a federal claim under Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and state law claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), conversion, trespass to chattels, and private nuisance. The complaint also includes "class allegations" for a putative class action related to each claim. Defendant moves to dismiss the complaint in its entirety [29].

## II. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it

rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim" and "may be considered by the district court in ruling on the motion to dismiss * * * without converting [it] to a motion for summary judgment." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

### III. Analysis

#### A. TCPA

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C). The statute also provides several exemptions from this prohibition—two of which are relevant here. First, the TCPA is not violated if "the unsolicited advertisement is from a sender with an established business relationship with the recipient." *Id.* § 227(b)(1)(C)(i). Second, the TCPA is not violated if "the sender obtained the number of the telephone facsimile

machine through * * * the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement." *Id.* § 227(b)(1)(C)(ii)(I).

In moving to dismiss Plaintiff's TCPA claim (Count I), Defendant advances two main arguments: (1) Defendant's fax was not an "advertisement"; and (2) the complaint fails to establish that the fax was "unsolicited." [29-1, at 2–6.] The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). A fax that touts either the "availability" or "quality" of a service can qualify. See *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 685 (7th Cir. 2013). "The TCPA does not require that an unwanted and uninvited fax make an overt sales pitch to its recipient in order for a cause of action to exist." *Green v. Time Ins. Co.*, 629 F. Supp. 2d 834, 837 (N.D. Ill. 2009). An "open invitation[] to do business" is all that is needed. *Brodsky v. HumanaDental Ins. Co.*, 2014 WL 2780089, at *7 (N.D. Ill. June 12, 2014); accord *Alpha Tech Pet, Inc. v. Lagasse, LLC*, 205 F. Supp. 3d 970, 973 (N.D. Ill. 2016). Furthermore, a fax can constitute an advertisement even if the vast majority of its content has nothing to do with promoting a service's availability or quality. See *Turza*, 728 F.3d at 687 (rejecting the argument that "25% of [Defendant's] fax alerting potential clients to the availability of his services is 'merely incidental' to the 75% that delivers business advice" because the TCPA statutory text "does not ask whether a notice of availability is incidental to something else").

Here, the complaint states a plausible claim that Defendant's fax qualifies as an advertisement. The fax touts the "addition" of a "new" physician who will be "able to support

the internal medicine needs of patients in the area," includes a "referral hotline," and a form for patients to fill out identifying who referred them and what "services" they want. [1, at 21–22.] Arguably, the fax promotes the availability of the services of Defendant's physicians and invites new business through a referral hotline and a referral patient form. See *Alpha Tech*, 205 F. Supp. 3d at 973 ("[A]lthough the faxes state that their purpose was to inform the recipients regarding the functionality of Defendants' email system, the purpose of providing that information was to enable the 'customers' who received the faxes to purchase goods from Defendants."). The fax expressly invites recipients to follow-up about these services with contact information. See *Physicians Healthsource, Inc. v. Stryker Sales Corp.*, 65 F. Supp. 3d 482, 490–91 (W.D. Mich. 2014) (distinguishing a fax where "the letterhead of the attorney invited to follow up with contact information provided" (which was found to be an advertisement) from the case where "no contract information is provided on the fax" (which was not)). Indeed, the majority of the fax's first page consists of the physicians' names, their specialties, Defendant's logo, and Defendant's contact information. Cf. *Turza*, 728 F.3d at 686 (holding that fax that "devotes about 75% of the space to mundane advice and the remainder to [Defendant's] name, address, logo, and specialties" was an advertisement). And Defendant advances no argument as to how the second page of the fax—the patient form—is inconsistent efforts to promote the commercial availability of the services offered by Defendant's physicians.

Defendant's main argument that this fax cannot constitute an advertisement is that it "merely notifies [Plaintiff] that Dr. Warren joined [Defendant's] practice group" and thus was "merely informational." [29-1, at 4–5.] Putting aside the fact that this description ignores everything else in the fax (*e.g.*, the logo, list of other physicians and their specialties, referral hotline, invitation for follow-up contact, and the patient form), the "information" that the fax

5

plausibly conveys is the commercial availability of Dr. Warren's services for patients in the Rockford Area. [1, at 21.] Defendant also argues that it is "not uncommon" for professionals to inform businesses with whom they have a prior relationship of their "new contact information" and the "failure to communicate may have significant negative consequences including that involving patient care." [29-1, at 5.] Here, however, the fax describes a "new physician" who "*will* be able to support" patients. [1, at 21 (emphasis added).] It does not directly speak to care for Dr. Warren's current patients. Nor does Defendant wrestle with how this patient care disruption story is consistent with the fax's inclusion of, essentially, a new patient request form.[1]

Defendant also urges the Court to look at its corporate character. Specifically, Defendant says that "Onsite as a non-person cannot be licensed as a physician practicing internal medicine" under Illinois law, and because "Onsite cannot as a corporate entity practice medicine, Onsite cannot advertise for services it cannot legally or physically provide." [34, at 2.] The Court does not see why the first proposition matters or how second proposition follows from the first. Defendant's opening brief states that "Onsite * * * provides professional medical services * * * through its staff of licensed physicians." [29-1, at 2.] Its fax announces Dr. Warren's addition to "Onsite Healthcare's team of providers." [1, at 21.] Arguing that Defendant is merely a corporate person who does not "physically provide" medical services, but only employs a team of natural persons who provide medical services is little more than word play. Whether or not Onsite literally practices internal medicine, it does not dispute that (1) it employs a team of physicians that practices medicine; or (2) it receives an economic benefit when its physician-employees charge for their medical services. The fact that its employees are the ones who, in fact, hold medical licenses is beside the point. Regardless, Defendant undermines the artificial

---

[1] If this form is for existing patients, it is unclear why there are sections to fill out the "referring company," the patient's contact information, or the patient's medical history. [See 1, at 22.]

distinction between its corporate form and its employees when it argues in a different section of its reply brief that "[u]nder the Illinois Medical Practice Act of 1987, Onsite and Louis R. Warren MD for purposes of practicing medicine *are one entity*." [34, at 4 (emphasis added).]

Moreover, nothing about the fact that a corporation cannot corporealize as a natural person, attend medical school, and receive a medical license from the State of Illinois means that a corporation "that provides professional medical services" [29-1, at 2] cannot "advertise" those very services offered by its employees. Accepting that Defendant was simply promoting the commercial availability of Dr. Warren's services—which only Dr. Warren can provide—would not make this fax any less of an "advertisement" under the TCPA, and Defendant does not cite a single case, statute, or regulation that undermines that common sense conclusion.[2] Plaintiffs have sufficiently alleged that this fax is an "advertisement" under the TCPA.[3]

---

[2] This circumstance is distinguishable from *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015), which involved a pharmacy benefit manager who sent healthcare providers information about prescription drug benefits so the providers would know which drugs were covered by their patients' plans. *Id.* at 220. The court held that the fax was not an advertisement because the manager did not sell medications or offer a formulary service, "had no interest whatsoever in soliciting business" from the recipient, and the fax did not "promote the drugs or services in a commercial sense" because "they're not sent with hopes to make a profit, directly or indirectly" or "attract clients or customers" from the recipient. *Id.* at 222. The record "instead shows that the faxes list the drugs in a purely informational, non-pecuniary sense." *Id.* Defendant does not make any substantive argument that its fax somehow promotes Dr. Warren's addition to its team of physicians in a non-pecuniary sense.

[3] The other cases on which Defendant relies have little similarity to this one. In *Physicians HealthSource, Inc. v. MultiPlan Services, Corp.*, 2013 WL 5299134 (D. Mass. Sept. 18, 2013), the fax "expressly" stated that the recipient was an "existing member" of Defendant's network, listed his network ID, and included "information advising him that he had access to a population of patients within the network by virtue of his participation in the [defendant's] Network." *Id.* at *1. There are no analogous statements that are obvious from the face of Defendant's fax, and Defendant does not point them out if they are there. In *P&S Printing LLC v. Tubelite, Inc.*, 2015 WL 4425793 (D. Conn. July 17, 2015), the fax communicated "information to current customers about a change in delivery schedule due to the Labor Day holiday." *Id.* at *5. The Court found that this change in schedule was designed to benefit current customers, not new ones. Defendant does not explain how a fax discussing the addition of a new physician providing new services and providing a referral hotline is analogous to fax reporting a company's holiday delivery schedule. Finally, to the extent that Plaintiff relies on *Holmes v. Back Doctors, Ltd.*, 2009 WL 3425961 (S.D. Ill. Oct. 21, 2009), for the proposition that a fax containing an "incidental advertisement" does not rise to the level of an "advertisement" under the TCPA [291, at 3], this analysis has not survived the Seventh Circuit's decision in *Turza*, which expressly rejected that argument. See *Turza*, 728 F.3d at 687.

Defendant's second argument—that the fax was "unsolicited"—does not fare any better. Issues related to "consent" and the existence of an existing business relationship are affirmative defenses for which Defendant bears the burden of proof. See *Alpha Tech*, 205 F. Supp. 3d at 979; *Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 67 F. Supp. 3d 874, 884 (N.D. Ill. 2014); *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 2016 WL 5390952, at *7 (N.D. Ill. Sept. 27, 2016). "[C]omplaints need not anticipate affirmative defenses," *Levin v. Miller*, 763 F.3d 667, 671 (7th Cir. 2014), although a complaint "may be dismissed if a valid affirmative defense is sufficiently obvious 'from the face of the complaint,'" *Syler v. Will Cty., Ill.*, 564 F. App'x 848, 849 (7th Cir. 2014). Here, the validity of Defendant's affirmative defenses is not obvious from the face of the complaint. Plaintiff alleges that it "had no prior relationship with defendant and had not authorized the sending of the fax advertisements to plaintiff." [1, ¶ 14.] Moreover, the fax's salutation "Dear Partners in Healthcare" is "generic" and impersonal, and thus "bolsters the allegation of a lack of prior business relationship." *Mussat v. Power Liens, LLC*, 2014 WL 3610991, at *2 (N.D. Ill. July 21, 2014) (reaching the same conclusion where the fax was addressed "'Dear Doctor or Office Manager'"). Whether Defendant can show that it is the entity who had an established business relationship with Plaintiff or otherwise satisfies Section 227(b)(1)(C)'s requirements are issues that can be addressed after discovery. Because the Court must accept Plaintiff's allegations as true at this stage of the case, Defendant's contention that this fax was not "unsolicited" as a matter of law cannot prevail. Accordingly, the Court denies Defendant's motion to dismiss Count I.

**B. ICFA**

The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and

deceptive business practices." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citation and internal quotation marks omitted). "To state a claim under the ICFA, Plaintiffs must allege five elements: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception." *Blankenship v. Pushpin Holdings, LLC*, 2015 WL 5895416, at *6 (N.D. Ill. Oct. 6, 2015); accord *Siegel*, 612 F.3d at 934–35. "The element of actual damages 'requires that the plaintiff suffer actual pecuniary loss.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citation omitted).

A plaintiff may allege either deceptive or unfair conduct (or both) under ICFA. *Siegel*, 612 F.3d at 935; *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012). For a business practice to be considered unfair, the Court considers "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). A plaintiff does not need to satisfy all three criteria to support a finding of unfairness. *Id.* at 418. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* (citation and internal quotation marks omitted). "[W]hether a practice is unfair depends on a case-by-case analysis." *Siegel*, 612 F.3d at 935. An ICFA claim for unfair practices need only satisfy Rule 8(a). *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

Plaintiff contends that sending an "unsolicited fax" is "contrary to the TCPA and Illinois law," and thus "Defendant engaged in an unfair practice and an unfair method of competition by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to

9

recipients of their advertising." [1, ¶¶ 37–38.] Courts applying ICFA largely agree that "sending unsolicited fax advertisement offends public policy." *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 616 (N.D. Ill. 2009); accord *Mussat*, 2014 WL 3610991, at *3 (collecting cases). Separate from the TCPA, Illinois considers the use of a fax machine to send an unsolicited advertisement a "petty offense" that can result in a fine of up to $500. 720 Ill. Comp. Stat. Ann. 5/26-3. Courts have divided, however, over whether *Robinson*'s second and third factors are satisfied by the receipt of a single unsolicited fax. See *Urban Elevator Serv., LLC v. Stryker Lubricant Distributors Inc.*, 2015 WL 6736676, at *2–3 (N.D. Ill. Nov. 4, 2015) (collecting cases). And beyond providing a string cite of cases [33, at 8], Plaintiff offers no argument as to how the latter two factors are met based on the facts of this case or why the Court should follow one side of this split in authority rather than the other.

In this case, the Court is persuaded by those courts that have found the receipt of a single unsolicited two-page fax—costing a couple of pennies worth of toner and paper—neither "oppressive" nor the cause of "substantial injury" in violation of ICFA. "The improper use of one piece of paper, a small amount of toner, and a few seconds of an employee's time is not oppressive conduct, nor does it fit within the definitions of any of the other terms." *Stonecrafters*, 633 F. Supp. 2d at 616–17; accord *Mussat*, 2014 WL 3610991, at *3 (holding that Defendant's "single, one-page fax cannot be said to burden [Plaintiff] to an oppressive level" and "[o]ne or two sheets of paper, the minimal toner, and the few seconds of a person's time expended in response to the unsolicited fax do not amount to a substantial injury"); *G.M. Sign, Inc. v. Elm St. Chiropractic, Ltd.*, 871 F. Supp. 2d 763, 770 (N.D. Ill. 2012) ("Improperly interfering with one piece of [Plaintiff's] paper, a tiny amount of its toner, and a trivial amount of its employees' time is not oppressive conduct."). "The only burden placed on [Plaintiff] was to

10

throw the fax in the trash. This deed can hardly be classified as 'unreasonable.'" *Paldo Sign*, 2010 WL 276701, at *4.

Moreover, "[Plaintiff] does not allege that [it] suffered more than trivial economic and non-economic damages." *Dolemba v. Illinois Farmers Ins. Co.*, 213 F. Supp. 3d 988 (N.D. Ill. 2016). In fact, in the "class allegations" section of its complaint, Plaintiff seeks only "appropriate damages" [1, ¶ 50(a)] for its ICFA claim, not the "actual damages" for which ICFA provides a remedy. See *Blankenship*, 2015 WL 5895416, at *6. Assuming a loss of 2 cents per page for each unauthorized 2-page fax, the class would have to consist of 2,500 people before the alleged harm plausibly reaches even $100. See *G.M. Sign*, 871 F. Supp. 2d at 770. Here, Plaintiff alleges "on information and belief that there are more than 40 members of the class"—or an aggregate harm of $1.60. [1, ¶ 45.] By any standard, that is not a "substantial injury." See *Urban Elevator*, 2015 WL 6736676, at *3 ("Forty people receiving a one-page fax does not amount to a 'substantial injury.'"). Because two of the three *Robinson* factors weigh against "unfairness," Illinois treats this conduct as meriting only a modest fine, and Plaintiff has already asserted a separate violation of the TCPA for this identical conduct, Plaintiff has failed to state a claim that the receipt of Defendant's allegedly unsolicited fax violates the unfairness prong of ICFA. Defendant's motion to dismiss the ICFA claim (Count II) is granted.

### C. Conversion

To state a claim for conversion under Illinois law, plaintiff must allege "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *G.M. Sign*, 871 F. Supp. 2d 7at 767 (citation and internal quotation marks

omitted). Defendant argues that Plaintiff never demanded possession, Defendant never exercised dominion or control over the property, and Plaintiff has failed to assert anything more than *de minimis* damages.

Defendant's first two arguments do not advance very far. "[A] claim for conversion may exist where the defendant did not exercise dominion or control over the property if the defendant 'intentionally destroys a chattel or so materially alters its physical condition as to change its identity or character.'" *Id.* (quoting Restatement (Second) of Torts § 226)); see also *Loman v. Freeman*, 229 Ill. 2d 104, 128 (2008). Here, Plaintiff alleges that the toner, ink, and paper were appropriated in a "manner as to make them unusable." [1, ¶ 54] Defendant does not articulate why this allegation is insufficient to state a claim under Illinois law. In addition, "a plaintiff need not allege a demand for return of the allegedly converted chattel if making such a demand would have been futile." *Brodsky v. HumanaDental Ins. Co.*, 2011 WL 529302, at *6 (N.D. Ill. Feb. 8, 2011). "A demand is 'useless' where a defendant has altered a plaintiff's property so that it can no longer be returned 'in its unaltered state.'" *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892, at *9 (N.D. Ill. May 27, 2008) (quoting *Loman*, 229 Ill. 2d at 128). Plaintiff's demand for its toner or fax paper could not have been anything other than futile.

Defendant's third argument has more merit, and requires distinguishing "nominal" damages from "*de minmis*" damages—two concepts that "are not interchangeable." *Savanna Grouip, Inc. v. Truan*, 2011 WL 703622, at *3 (N.D. Ill. Feb. 22, 2011). A nominal damages award "presupposes a violation of sufficient gravity to merit a judgment, even if significant damages cannot be proved." *Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007). Said differently, "[n]ominal damages for conversion are properly awarded when the interference is severe enough to justify the payment of nominal damages, even if actual damages

12

are absent." *Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.*, 2012 WL 638765, at *3 (N.D. Ill. Feb. 23, 2012). "[F]or example, nominal damages might be appropriate in a case in which the defendant converts plaintiff's valuable antique coin collection but then, during the pendency of the lawsuit, returns the coins to plaintiff unharmed." *Stonecrafters*, 633 F. Supp. 2d at 614. Because the "the conversion of the coins had caused a significant injury" that merits a judgment for plaintiff but "plaintiff [might be] unable to prove any damages resulting from the temporary loss of use of his coin collection, only nominal damages would be awarded." *Id.*[4]

In contrast, the maxim *de minimis non curat lex* ("the law cares not for trifles") applies to damages that are "minuscule to the point of nonexistent." *Brandt*, 480 F.3d at 465. "[U]nder the *de minimis* maxim, a conversion claim is not actionable if the damages are negligible from the onset of the lawsuit." *Savanna Grouip*, 2011 WL 703622, at *3; see also *Paldo Sign*, 2010 WL 276701, at *3 ("Under the *de minimus* maxim, there are never significant damages available, either at the time of the conversion, the time of the lawsuit, or during trial."). "For example, if the defendant takes the plaintiff's inexpensive ball point pen and a notebook without his permission, uses the pen and one sheet of paper from the notebook to write a short letter, and then immediately returns the remainder of the plaintiff's supplies to him, the *de minimis* doctrine would be implicated." *Stonecrafters*, 633 F. Supp. 2d at 615. "[P]laintiff still would have a claim for conversion based on the loss of the ink from the pen and the missing sheet of paper that was used to write the letter." *Id.* "However, this claim would be so insignificant or trifling that the *de minimis* doctrine would bar the plaintiff from proceeding on such a claim." *Id.*

Plaintiff contends "there is no *de minimis* defense" to conversion under Illinois law. [33, at 10.] That is incorrect. This maxim "retains force" in Illinois. *People v. Durham*, 391 Ill.

---

[4] The scenario is comparable to the one described in *Indiana Hi-Rail Corp. v. Decatur Junction Railway Co.*, 37 F.3d 363 (7th Cir. 1994), where a train worth over $50,000 was allegedly converted but returned to plaintiff at the time the action commenced, which entitled the plaintiff to only nominal damages.

App. 3d 1100, 1103 (2009); accord *In re Krueger*, 192 F.3d 733, 742 (7th Cir. 1999) ("Illinois courts also recognize the doctrine of *de minimis non curat lex*[.]"). Indeed, it "is part of the established background of legal principles against which all enactments are adopted, and which all enactments (absent contrary indication) are deemed to accept." *Wisc. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992).[5] As one court in this district put it, "the ancient maxim de minimis non curat lex might well have been coined for the occasion in which a conversion claim is brought based solely on the loss of paper and toner consumed during the generation of a one-page unsolicited fax advertisement." *Stonecrafters*, 633 F. Supp. 2d at 613 (citation and internal quotation marks omitted). Any damages from the ink, toner, and paper in connection with this two-page fax are plainly *de minimis*. See *id.* at 615; accord *G.M. Sign*, 871 F. Supp. 2d at 767–68; *Paldo Sign*, 2010 WL 276701, at *3; *Sturdy v. Medtrak Educ. Servs. LLC*, 2014 WL 2727200, at *5 (C.D. Ill. June 16, 2014); *Garrett v. Rangle Dental Lab.*, 2010 WL 3034709, at *1 (N.D. Ill. Aug. 3, 2010); *ABC Bus. Forms, Inc. v. Pridamor, Inc.*, 2009 WL 4679477, at *3 (N.D. Ill. Dec. 1, 2009).[6] "[T]he most [Plaintiff] can hope to gain from a favorable judgment on Count [III] is a few pennies. This fact was true the moment the fax was printed, and has not changed since that point in time." *Paldo Sign*, 2010 WL 276701, at *3. Plaintiff's mere assertion that "at least nominal damages [should be] awarded for the invasion of [its] property rights" does not alter the fact that this invasion was not "severe enough to justify

---

[5] In no way does the Court "overrule the determination of Congress and the Illinois legislature" [33, at 10] in reaching this conclusion. The viability of a common law conversion claim has no bearing on Plaintiff's TCPA claim. Nor does Plaintiff actually contend that the Illinois legislature in adopting 720 Ill. Comp. Stat. Ann. 5/26-3—a criminal statute—provided a private right of action to recipients of unwanted faxes or rendered unavailable the *de minimis* maxim in conversion cases.

[6] Plaintiff does not wrestle with any of the cases decided over the last decade that have expressly declined to follow *Centerline Equip. Corp. v. Banner Pers. Serv., Inc.*, 545 F. Supp. 2d 768 (N.D. Ill. 2008), on whether a plaintiff can state a conversion claim based on the receipt of a single junk fax. Dismissing such claims under the *de minimis* maxim has been the trend in authority in this circuit.

the payment of nominal damages." *Old Town Pizza*, 2012 WL 638765, at *3. Moreover, "[c]umulative allegations of a putative class in a complaint cannot be used to prop up an otherwise trivial claim that is unable to stand on its own." *Stonecrafters*, 633 F. Supp. 2d at 614. Accordingly, the Court grants the motion to dismiss Plaintiff's conversion claim (Count III).

### D. Trespass to Chattels

A trespass to chattels requires "[a]n injury to or interference with possession, with or without physical force, * * * to personal property." *Sotelo v. DirectRevenue, LLC*, 384 F. Supp. 2d 1219, 1229 (N.D. Ill. 2005) (citation and internal quotation marks omitted). It can occur by "intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." *Id.* (citation and internal quotation marks omitted). "Harm to the personal property or diminution of its quality, condition, or value as a result of a defendant's use can also result in liability." *Id.* In addition, causation and damages are elements of a trespass to chattel claim. See *Lewis v. Weis*, 2012 WL 45242, at *3 (N.D. Ill. Jan. 5, 2012) (describing this claim as "an antiquated cause of action that has reemerged in recent years, mostly regarding claims involving abuses of email and the Internet"). This tort is "on the same spectrum" as conversion and differs "only with respect to the extent of interference with the property owner's rights." *G. Neil Garrett, D.D.S., P.C. v. New Albertson's, Inc.*, 2014 WL 2198242, at *5 (N.D. Ill. May 27, 2014).

Plaintiff contends that Defendant's faxes "interfered with use of [Plaintiff's] receiving equipment" (presumably, its fax machine) and "constitutes a trespass to such equipment." [1, ¶ 80.][7] Plaintiff does not allege, however, that its fax machine was harmed in any way or the machine's quality, condition, or value diminished as a result of receiving this fax. Moreover, to

---

[7] The parties debate whether Plaintiff received a digital facsimile or received a paper fax. At this stage, the Court accepts as true Plaintiff's allegation that it received a tangible fax that was printed. [33, at 13.] That said, Plaintiff's trespass claim pertains only to its fax machine [1, ¶ 80].

15

the extent Plaintiff alleges that Defendant acted "negligently" in engaging in such conduct [1, ¶ 81], this state of mind is insufficient to state a claim. Cf. *Seaphus v. Lilly*, 691 F. Supp. 127, 135 (N.D. Ill. 1988) ("Where damage *intentionally* inflicted on personal property belonging to another does not result in complete destruction of the item, a claim for trespass to chattel will lie." (emphasis added)). But even to the extent that Plaintiff alleges that Defendant acted intentionally by "using or intermeddling with" Plaintiff's fax machine by transmitting an unwanted fax to this machine, this fleeting interference fails to state a claim under the *de minimis non curat lex* maxim as well. See *G. Neil*, 2014 WL 2198242, at *5; *Sturdy*, 2014 WL 2727200, at *5. Plaintiff does not contend that this damage would be anything more than a few pennies. That state of affairs is equally true now as it was when Plaintiff received this fax. As a result, the Court grants the motion to dismiss Plaintiff's trespass to chattels claim (Count V).

### E. Nuisance

"A private nuisance is a substantial invasion of another's interest in the use and enjoyment of his or her land. The invasion must be: substantial, either intentional or negligent, and unreasonable." *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 204 (1997). The Illinois Supreme Court "has repeatedly described a nuisance as something that is offensive, physically, to the senses and by such offensiveness makes life uncomfortable." *Id.* at 205 (citation omitted). "Typical examples would be smoke, fumes, dust, vibration, or noise produced by defendant on his own land and impairing the use and enjoyment of neighboring land." *Id.* at 205–06. "The standard for determining if particular conduct constitutes a nuisance is the conduct's effect on a reasonable person." *Id.* at 204.

"This court agrees with Defendant[] that the single unsolicited fax advertisement at issue here was not a substantial invasion of Plaintiff's enjoyment of his property." *Sturdy*, 2014 WL

2727200, at *5.  A reasonable person would not consider the receipt of a single, two-page fax to be offensive in a way that makes life uncomfortable or to be a substantial and unreasonable invasion of their enjoyment of their property.  "The conduct here is far removed from that presented in classic nuisance cases, such as pollution or noise of a perpetual or ongoing nature" and Plaintiff's argument "not only distorts the meaning of a private nuisance, but equates any singular *de minimis* encroachment or trespass into a private nuisance."  *Schweihs v. Chase Home Fin., LLC*, 2015 IL App (1st) 140683, ¶ 42.  "No Illinois decisions were found by this court or cited by the plaintiff that recognize a private nuisance action for interference with a fax machine and its paper, which are personal property."  *G. Neil*, 2014 WL 2198242, at *5.  While Plaintiff cites cases that discuss the TCPA's legislative history and describe junk faxes as a "nuisance" in the common sense of the word, they "do not support Plaintiff's contention that a single unsolicited fax gives rise to a claim for private nuisance under Illinois common law."  *Sturdy*, 2014 WL 2727200, at *5 (rejecting the same arguments and cases cited by Plaintiff's attorneys in the instant litigation).  Therefore, Plaintiff's private nuisance claim (Count IV) is dismissed.

**IV.     Conclusion**

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion to dismiss [29].  The Court grants the motion to dismiss Counts II through V, but denies the motion to dismiss Count I.  This case is set for further status on June 15, 2017, at 9:00 a.m. to discuss pre-trial scheduling and the possibility of settlement.

Dated: May 17, 2017

_____
Robert M. Dow, Jr.
United States District Judge

17